IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUA INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | NO. 2010-313 |
| | * | |
| S & O INVESTMENTS, LLC; | * | |
| CHRISTOPHER M. ODOM; | * | |
| JONATHAN S. SHEWMAKE; | * | |
| CHARLES PARKER; RACHEL PARKER; | * | |
| and JOSEPH FERNANDEZ, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff SUA Insurance Company ("SUA"), by and through its undersigned counsel, and for its Complaint against Defendants S&O Investments, LLC, Christopher M. Odom, Jonathan S. Shewmake (collectively referred to as "S&O"), Charles Parker, Rachel Parker and Joseph Fernandez, alleges, states and avers as follows:

## PARTIES

1.      Plaintiff SUA is an Illinois insurance company that is authorized to and does write insurance policies to business in Alabama such as S&O.

2.      Defendant S&O Investments, LLC is an Alabama corporation with its principal place of business in Mobile County, Alabama.

3.      Defendant Christopher M. Odom is a citizen of the State of Alabama and resides in Mobile County, Alabama.

4.      Defendant Jonathan S. Shewmake is a citizen of the State of Alabama and resides in Mobile County, Alabama.

5.      Defendants Charles Parker and Rachel Parker are citizens of the State of Alabama and reside in Mobile County, Alabama.

6.      Defendant Joseph Fernandez is a citizen of the State of Alabama and resides in Mobile County, Alabama.

## JURISDICTION

7.      This Court has jurisdiction pursuant to 28 U.S.C. §1331(a)(1) as there is diversity of citizenship between the Plaintiff, a resident of the state of Illinois, and the Defendants, residents of the State of Alabama.   The amount in controversy exceeds $75,000, exclusive of interests and costs.

## PAYTON LAWSUIT

8.      On December 9, 2009, a lawsuit was filed in the United States District Court for the Eastern District of Louisiana, entitled *Sean and Beth Payton v. Knauf Gips, KG, et al.*, Case No.: 2:09-cv-07628-EEF-JCW ("Payton Lawsuit"), against numerous defendants, including S&O.  A true and correct copy of the Complaint in the Payton Lawsuit is attached hereto as Exhibit A.

9.      By reciting herein allegations from the Complaint in the Payton Lawsuit, SUA is not suggesting that said allegations have any merit.  The Complaint in the Payton Lawsuit includes the following allegations:

> a.  Plaintiffs Charles and Rachel Parker are residents of Alabama and together own real property located at 963 Weatherby St., S., Saraland, Alabama 36571.  Plaintiffs are participating as class representatives in the class and subclasses as set forth in the schedules accompanying this complaint which are incorporated herein by reference. (¶ 353).

b. Plaintiff Joseph Fernandez is a resident of Alabama and owns real property located at 967 Weatherby St., S., Saraland, Alabama 36571. Plaintiff is participating as a class representative in the class and subclasses as set forth in the schedules accompanying this complaint which are incorporated herein by reference. (¶ 354).

c. Defendant S&O Investments, LLC is an entity or individual with a principal place of business in Alabama.  Defendant is organized under the laws of Alabama.  Defendant certain subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein. (¶2438).

d. Defendant Christopher M. Odom is an entity or individual with a principal place of business at 107 Westwood St., Mobile, Alabama 36606.  Defendant built certain subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein. (¶2439).

e. Defendant Jonathan S. Shewmake is an entity or individual with a principal place of business at 6489 Lakeview Ct., Saraland, Alabama 36571.  Defendant built certain subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein. (¶2440).

10. Exhibit 3-2 attached to the Complaint in the Payton Lawsuit identifies S&O as the Builder/Developer with respect to the homes owned by underlying plaintiffs Charles Parker, Rachel Parker and Joseph Fernandez.

11. The Complaint in the Payton Lawsuit also includes the following general allegations:

a. Upon information and belief, Defendants' drywall contains gypsum. (¶2610).

b. In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), the gypsum and other components of the product break down and release sulfides and other

3

noxious gases that are then emitted (or "off-gassed") from the drywall. (¶2611).

c. Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property). (¶2612).

d. Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall. (¶2613).

e. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm. (¶2614).

f. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation. (¶2615).

g. Defendants recklessly, wantonly and/or negligently implement faulty, procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation. (¶2616).

h. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury. (¶2617).

4

i.   As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries. (¶2618).

j.   As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring. (¶2619).

12.   Count I of the Complaint in the Payton Lawsuit includes the following allegations:

a.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

b.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

c.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

d.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should

have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

e.  Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

f.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

13.  Count II of the Complaint in the Payton Lawsuit includes the following allegations:

a.  Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

b.  Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

c.  Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

d.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

14.  Count III of the Complaint in the Payton Lawsuit includes the following allegations:

a.  At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

b.  The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

c.  Defendants knew that the subject drywall would be used without inspection for defects by consumers.

d.  Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

e.  When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

f.  At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

g.  The subject drywall was not misused or altered by any third parties.

h.  The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

i.  The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

j.  The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through off-gassing.

k.  The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

l.  The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

m.  The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

n.  Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discovery that Defendants' drywall was defective, as set forth herein, or perceive its danger.

o.  Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

p.  Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

q.  The defects in the drywall, as well as Defendants' failure to adequately warn Class Members of the defects rendered the drywall unreasonably dangerous and was [sic] the direct and proximate cause of damages and/or personal injuries to Class Members.

15.   Count IV of the Complaint in the Payton Lawsuit includes the following allegations:

a.  Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

b.  At the times Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

c.  Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

d.  The drywall was defective and not merchantable because it was unfit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in structures owned by Plaintiffs and

Class Members for use as a building material, because it contained defects as set forth herein.

e. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the defects set forth herein.

f. Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

g. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

16.     Count VI of the Complaint in the Payton Lawsuit includes the following allegations:

a. The Builder Defendants were in direct contractual privity with their Subclass Members.

b. The drywall that the Builder Defendants installed in the homes of Subclass Members was placed into the stream of commerce by the Builder Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said drywall product without substantial change in the condition in which it was sold.

c. Certain Subclass Members bought their homes containing defective drywall based upon the judgment of the Builder Defendants.

d. The Builder Defendants breached the implied warranty of habitability because the defective drywall causes Subclass Members homes not be [sic] meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality due to the defects set forth herein.

e. The Builder Defendants had reasonable and adequate notice of the claims of the Subclass Members for breach of implied warranty of habitability and failed to cure.

f. As a direct and proximate cause of the Builder Defendants' breach of the implied warranty of habitability, Plaintiffs and Subclass Members

have incurred harm and damages and/or personal injuries as described herein.

17. Count VII of the Complaint in the Payton Lawsuit includes the following allegations:

    a. As part of the agreements to purchase real properties from the Builder Defendants, for which Subclass Members paid valuable consideration, the Builder Defendants contracted with Subclass Members to construct homes that would be free of defects.

    b. The Builder Defendants materially breached their contracts by providing Subclass Members with defective homes; to wit, the homes contained drywall that is inherently defective because it emits various sulfide and other noxious gases through off-gassing that causes harm and damage as described herein.

    c. As a direct and proximate cause of the Builder Defendants' breach of contract, Plaintiffs and Subclass Members have incurred harm and damages as described herein.

18. Count XI of the Complaint in the Payton Lawsuit includes the following allegations:

    a. The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

    b. Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

    c. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

    d. The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

    e. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries,

harm, loss, and increased risk of harm, which they suffered and will
continue to suffer.

19.     Count XII of the Complaint in the Payton Lawsuit includes the following

allegations:

> a. Defendants had actual or constructive knowledge of the extremely
> corrosive and dangerous propensities of the drywall at issue in this
> litigation.

> b. Notwithstanding their actual or constructive knowledge of the
> corrosive and dangerous propensities of the drywall, Defendants
> nevertheless designed, manufactured, imported, distributed, delivered,
> supplied, marketed, inspected, installed, or sold the drywall for use in
> the homes or other structures owned by Plaintiffs and class members.

> c. By causing the sale, distribution, delivery, and/or supply of the drywall
> under these circumstances, Defendants breached their duty to exercise
> reasonable care and created a foreseeable zone of risk of injury to
> Plaintiffs and class members.

> d. Defendants likewise breached their duties to Plaintiffs and Class
> Members by failing to warn about the corrosive and dangerous
> propensities of the drywall. Defendants, through the exercise of
> reasonable care, knew or should have known the nature of the
> defective drywall and the adverse effects that it could have on the
> property and bodies of Plaintiffs and Class Members.

> e. Plaintiffs and class members have suffered injuries by virtue of their
> exposure to the defective drywall at issue in this litigation. Given the
> defect in the Defendants' drywall, Defendants knew or should have
> known that their product could, and would, cause harm, damages
> and/or personal injuries to Plaintiffs and Class Members.

20.     Count XIII of the Complaint in the Payton Lawsuit includes the following

allegations:

> a. Defendants received money as a result of Plaintiffs' and Class
> Members' purchases of Defendants' defective drywall, or purchases of
> structures containing this drywall, either directly or through an agent,
> and Defendants wrongfully accepted and retained these benefits to the
> detriment of Plaintiffs and Class Members.

11

    b.  Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

    c.  Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

21.    Count XIV of the Complaint in the Payton Lawsuit includes the following allegations:

    a.  This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including . . . Alabama Code 1975 § 8-19-1, et seq. (Alabama Deceptive and Unfair Trade Practices Act). . . .

    b.  The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

    c.  Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

    d.  As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

22.    Count XV of the Complaint in the Payton Lawsuit includes the following allegations:

    a.  Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

    b.  Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

c.  Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes or other structures, or in the alternative, remediate, repair and/or replace the drywall in such structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

d.  Until Defendants' defective drywall has been removed and remediated, Defendants must provide continued environmental and air monitoring in the structures owned by Plaintiffs and Class Members.

e.  Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

f.  The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

g.  Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

h.  Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

i.  The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

j.  As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

## THE SUA POLICIES

23.     SUA issued Policy Nos. 10AUICP-001046-GL01 ("SUA Policy 1") and 10AUIAIG-1011834-GL01 ("SUA Policy 2") to S&O in Mobile County, Alabama, in which Defendants Odom and Shewmake also qualified as insureds.  A true and correct copy of both SUA Policies are attached hereto collectively as Exhibit B.

24.     SUA Policy 1 was effective from May 25, 2006 through May 25, 2007.

25.     SUA Policy 2 was effective from May 25, 2007 through May 25, 2008.

26.     The limits of insurance for SUA Policy 1 are $1,000,000 Each Occurrence, $2,000,000 Products/Completed Operations and $2,000,000 General Aggregate, subject to a $1,000 per claim deductible.

27.     The limits of insurance for the SUA Policy 2 are $1,000,000 Each Occurrence, $2,000,000 General Aggregate and includes Products/Completed Operations coverage, subject to a $1,000 per claim deductible.

28.     Both SUA Policies contain the following Insuring Agreement:

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period…

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury' or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

29.    SUA Policy 1 contains the following Products/Completed Operations Liability Insuring Agreement:

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies. We will have the right and duty to defend the insured

15

against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period…

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury' or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

30.     SUA Policy 2 contains the following Endorsement:

EXCLUSION – INTENTIONAL INJURY

***

2.      Exclusions

This insurance does not apply to:

a.   Intentional Injury

i.   Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured.

31.     The SUA Policies include the following Endorsement:

TOTAL POLLUTION EXCLUSION
WITH A HOSTILE FIRE EXCEPTION

Exclusion f. under Paragraph 2., Exclusions of Section 1 — Coverage A — Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat,

17

detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

32.    SUA Policy 2 contains the following Endorsement:

EXCLUSION - CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING

This insurance does not apply to:

Condominium, Apartment and Townhouse

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 5 units.

This exclusion does not apply if "your work" or "your product" occurs after the condominium, apartment or townhouse project has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

Tract Housing

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development."

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in this endorsement, the following is added to SECTION V - DEFINITIONS:

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction of five (5) or more residential buildings in any or all phases of the project or development.

33.     Both SUA Policies contain the following Endorsement:

SUNSET PROVISION

***

This policy will not provide any coverage, regardless of the other terms and conditions of the policy, including the definition of "occurrence," for any claim or "suit" made against an insured unless the claim or "suit" is reported in writing to us within two (2) years after the expiration of the policy period.

The provisions of this endorsement shall not extend or otherwise affect any time limitation or requirements set forth in the Policy regarding notice or reporting.

34.     SUA Policy 2 contains the following exclusion:

a.      Expected of Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

35.     Both SUA Policies contain the following exclusions:

j.      Damage to Property

"Property damage" to:

***

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

19

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.     Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.     Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

The exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.     Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

n.     Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

36.     The SUA policy contains the following definitions:

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8.      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15.     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.     "Products-completed operations hazard":

   a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        ***

        (2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

             (a) When all of the work called for in your contract has been completed.

21

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. Al such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21.    "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name;

* * *

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

22.    "Your work":

a.  Means:

    (1)  Work or operations performed by you or on your behalf; and

    (2)  Materials, parts or equipment furnished in connection with such work or operations.

b.  Includes:

    (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2)  The providing of or failure to provide warnings or instructions.

37.  Although lettered or numbered differently, all of the above-listed exclusions in paragraph 35 and definitions in paragraph 36 are contained in the Products/Completed Operations Liability Coverage Form in SUA Policy 1 and are expressly alleged herein, irrespective of the lettering or numbering used herein.

## COUNT I - DECLARATORY JUDGMENT -
## NO DUTY TO DEFEND

38.  SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

39.  With respect to S&O, the Complaint in the Payton Lawsuit alleges only that "Defendant built certain subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein."

40.  The Complaint does not contain any allegations with respect to any injuries or damages experienced by Plaintiffs (defendants herein) Charles Parker, Rachel Parker and Joseph Fernandez.

41.     The absence of any fact-specific allegations with respect to any injuries or damages experienced by Charles Parker, Rachel Parker and Joseph Fernandez allegedly caused by S&O and the conclusory nature of the allegations preclude any possibility of coverage under the SUA Policies in connection with the Payton Lawsuit.

42.     There is no potential or actual coverage under the SUA Policies for S&O in connection with the Payton Lawsuit.

43.     SUA has no duty to defend S&O for the allegations set forth in the Payton Lawsuit.

## COUNT II - DECLARATORY JUDGMENT - NO "OCCURRENCE" OR "PROPERTY DAMAGE"

44.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

45.     The Payton Complaint includes Counts against S&O for breach of contract and breach of warranties resulting from its alleged faulty workmanship with respect to the purportedly defective drywall installed in the home of Charles Parker, Rachel Parker and Joseph Fernandez.

46.     Claims for faulty workmanship, breach of contract and breach of warranty do not constitute an "occurrence" or "property damage" as those terms are defined in the SUA Policies.

47.     There is no potential or actual coverage under the SUA Policies to the extent that S&O's liability in the Payton Lawsuit arises out of its alleged faulty workmanship, breach of contract or breach of warranty.

48.     SUA, therefore, has no duty to defend or indemnify S&O for the allegations against it in the Payton Lawsuit.

## COUNT III - DECLARATORY JUDGMENT -
## NO "BODILY INJURY" OR "PROPERTY DAMAGE"
## DURING THE SUA POLICY PERIOD

49.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

50.     The SUA Policies apply only if "bodily injury" or "property damage" takes place during a policy period.  SUA Policy 1 was effective from May 25, 2006 through May 25, 2007, and SUA Policy 2 was effective from May 25, 2007 through May 25, 2008.

51.     There are no allegations that Charles Parker, Rachel Parker or Joseph Fernandez experienced "bodily injury" or that there was any "property damage" to their home during either SUA policy period.

52.     The absence of any "bodily injury" or "property damage" during either SUA policy period precludes any potential or actual coverage under the SUA Policies for S&O in connection with the Payton Lawsuit.  Pleading in the alternative, if there was any "bodily injury" or "property damage" during either SUA policy period, coverage would exist only for such "bodily injury" or "property damage," and not for any "bodily injury" or "property damage" which did not take place within an SUA policy period.

53.     SUA has no duty to defend or indemnify S&O for the allegations against it in the Payton Lawsuit, or in the alternative, any duty to indemnify is limited to "bodily injury" or "property damage" which took place within a SUA policy period.

## COUNT IV - DECLARATORY JUDGMENT -
## EXCLUSIONS

54.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

55.     To the extent the Complaint in the Payton Lawsuit alleges "property damage" during an SUA policy period from an "occurrence" arising out of S&O's construction work, any

or all of the following Exclusions in the SUA Policies operate to exclude coverage in whole or in part:

    a.      Exclusion j(6) - "Damage to Property";

    b.      Exclusion k – "Damage To Your Product";

    c.      Exclusion l - "Damage To Your Work";

    d.      Exclusion m – "Damage To Impaired Property Or Property Not Physically Injured"; and

    e.      Exclusion n – "Recall Of Products, Work Or Impaired Property"

56.    Any potential or actual coverage under the SUA Policies for S&O in connection with the Payton Lawsuit is excluded in whole or in part by one or more of these exclusions.

57.    SUA, therefore, has no duty to defend or indemnify S&O for the allegations against it in the Payton Lawsuit to the extent any of these exclusions apply.

## COUNT V - DECLARATORY JUDGMENT - TOTAL POLLUTION EXCLUSION

58.    SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

59.    The Complaint in the Payton Lawsuit alleges that the "release [of] sulfides and other noxious gases" caused "bodily injury" and "property damage."

60.    The "Total Pollution Exclusion" Endorsement in the SUA Policies precludes any coverage for "bodily injury" or "property damage" caused by the release of "gaseous  . . . irritant or contaminant, including . . . vapor, . . . fumes, acids, alkalis, . . . ."

61.    The "Total Pollution Exclusion" Endorsement in the SUA Policies applies to preclude coverage for "bodily injury" and "property damage" alleged in the Payton Lawsuit to have occurred as a result of the "release [of] sulfides and other noxious gases."

62.     To the extent S&O's liability arises out of the "release [of] sulfides and other noxious gases," there is no potential or actual coverage under the SUA Policy for S&O in connection with the Payton Lawsuit.

63.     SUA, therefore, has no duty to defend or indemnify S&O for the allegations against it in the Payton Lawsuit.

## COUNT VI - DECLARATORY JUDGMENT - NO "OCCURRENCE"/EXPECTED OR INTENDED INJURY/KNOWN LOSS

64.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

65.     The Complaint in the Payton Lawsuit alleges that the defendants knew or should have known about the defective nature of the subject drywall and the potential injury and damage it could cause, but failed to provide a warning.

66.     The Complaint also alleges defendants' acted intentionally and recklessly, and made knowing misrepresentations with respect to the subject drywall and the potential injury and damage it could cause.

67.     Any damages resulting from S&O's intentional or reckless conduct are not damages caused by an "accident."

68.     The allegations of intentional or reckless conduct in the Complaint in the Payton Lawsuit do not constitute an "occurrence" as that term is defined in the SUA Policies.

69.     The "Expected or Intended" Exclusion in the SUA Policies excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

70.     The "Expected or Intended" Exclusion applies to exclude any potential or actual coverage in connection with the Payton Lawsuit to the extent that S&O's liability arises out of its intentional and/or reckless conduct.

71.     There is no coverage under the SUA Policies to the extent that any insured knew of any "bodily injury" or "property damage" prior to the inception of either SUA Policy.

72.     There is no potential or actual coverage under the SUA Policies in connection with the Payton Lawsuit to the extent that any insured knew of the alleged "bodily injury" or "property damage" prior to the inception of either SUA Policy.

73.     SUA, therefore, has no duty to defend or indemnify S&O for the allegations against it in the Payton Lawsuit.

**COUNT VII - DECLARATORY JUDGMENT -
EXCLUSION - CONDOMINIUM, APARTMENT, TOWNHOUSE
OR TRACT HOUSING**

74.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

75.     The Complaint in the Payton Lawsuit alleges that S&O "built certain subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages."

76.     The Complaint alleges S&O was the Builder/Developer with respect to the homes owned by Charles Parker, Rachel Parker and Joseph Fernandez.

77.     The Complaint also alleges that Charles Parker and Rachel Parker live on "967 Weatherby St., S., Saraland, Alabama 36571," and that Joseph Fernandez lives on "963 Weatherby St., S., Saraland, Alabama 36571."

78.     The "Exclusion - Condominium, Apartment, Townhouse or Tract Housing" in SUA Policy 2 precludes any coverage for "bodily injury" and "property damage" in connection with the construction of condominiums, apartments, townhouses and tract housing that exceed five (5) units or buildings.

79.     To the extent that the homes owned by Charles Parker, Rachel Parker and Joseph Fernandez are "condominiums, apartments, townhouses [or] tract housing" and were part of a project involving more than five (5) units or buildings, the "Exclusion - Condominium, Apartment, Townhouse or Tract Housing" in SUA Policy 2 applies to preclude any potential or actual coverage for S&O in connection with the Payton Lawsuit.

80.     Consequently, there is no potential or actual coverage under SUA Policy 2 for S&O in connection with the Payton Lawsuit.

81.     SUA, therefore, has no duty to defend or indemnify S&O under SUA Policy 2 for the allegations against it in the Payton Lawsuit.

## COUNT VIII - DECLARATORY JUDGMENT - SUNSET PROVISION

82.     SUA incorporates by reference paragraphs 1-37 above as if fully stated herein.

83.     The Payton Lawsuit was first reported in writing to SUA in April 2010.

84.     SUA Policy 1 is effective May 25, 2006 through May 25, 2007.

85.     Pursuant to the "Sunset Provision" Endorsement, coverage under SUA Policy 1 is contingent on a claim or "suit" made against S&O being reported in writing to SUA within two (2) years of the expiration of said policy.

86.     The "Sunset Provision" Endorsement in SUA Policy 1 applies to preclude any potential or actual coverage for S&O in connection with the Payton Lawsuit as SUA did not receive written notice of a claim or the Payton Lawsuit until two (2) years after the expiration of SUA Policy 1.

87.     Consequently, there is no potential or actual coverage under the SUA Policy 1 for S&O in connection with the Payton Lawsuit.

88.     SUA, therefore, has no duty to defend or indemnify S&O under SUA Policy 1 for the allegations against it in the Payton Lawsuit.

WHEREFORE, Plaintiff, SUA prays:

A.      That this Court determines and adjudicates the rights and liabilities of the parties hereto with respect to the SUA Policy.

B.      That this Court find and declare that the SUA Policies do not potentially or actually cover any portion of the claims against S&O in the Payton Lawsuit, or that any coverage is limited in accordance with the terms of the SUA policies as set forth herein.

C.      That this Court find and declare that SUA has no duty to defend or indemnify S&O in connection with the Payton Lawsuit and that such ruling is binding against Charles Parker, Rachel Parker and Joseph Fernandez.

D.      That this Court grants such other and further relief as it deems proper under the circumstances.

/s Christina May Bolin

CHRISTINA MAY BOLIN (MAY032)
E-Mail:  CMB@AlfordClausen.com
ANDREW C. CLAUSEN (CLA044)
E-Mail:  ACC@AlfordClausen.com
Attorneys for Plaintiff

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

PLEASE SERVE DEFENDANTS AS FOLLOWS:


S&O Investments, LLC                (Via Certified Mail)
c/o Christopher M. Odom, Registered Agent
107 Westwood Street
Mobile, AL  36606


Christopher M. Odom                 (Via Certified Mail)
107 Westwood Street
Mobile, AL  36606


Jonathan S. Shewmake                (Via Certified Mail)
6489 Lakeview Court
Saraland, AL  36571


Charles Parker                      (Via Certified Mail)
963 Weatherby Street
Saraland, AL  36571


Rachel Parker                       (Via Certified Mail)
963 Weatherby Street
Saraland, AL  36571


Joseph Fernandez                    (Via Certified Mail)
967 Weatherby Street
Saraland, AL  36571