# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SUA INSURANCE COMPANY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 10-0313-WS-M |
| | ) |
| S&O INVESTMENTS, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for summary judgment. (Doc. 45). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 46-49, 54-56), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff issued two policies of insurance to the entity defendant ("S&O"), pursuant to which defendants Shewmake and Odom (collectively, "the insureds") were also insured. The first policy ("Policy 1") covered the term May 25, 2006 to May 25, 2007. The second policy ("Policy 2") covered the term May 25, 2007 to May 25, 2008. (Doc. 48, Exhibits 8, 9).

S&O built two houses in 2006, which it sold the same year. (Doc. 46 at 5-6). One house was re-sold to defendants Charles and Rachel Parker on April 23, 2008. (*Id*. at 6). The other was re-sold to defendant Joseph Fernandez in November 2008. (*Id*.).

Unfortunately for all concerned, the houses were constructed using Chinese drywall. The Parkers and Fernandez eventually became class representatives in a suit naming numerous defendants, including S&O. (Doc. 46 at 3). The plaintiff filed this

declaratory judgment action seeking a declaration that it has no duty to defend or indemnify S&O in connection with the class lawsuit. (Doc. 1 at 30). The plaintiff recently voluntarily dismissed five counts of the complaint, (Docs. 44, 53), leaving three. Count III argues there was no bodily injury or property damage within the policy period. Count V asserts a pollution exclusion, and Count VII addresses a tract housing exclusion. The plaintiff seeks summary judgment on all three grounds.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (explaining *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Walker v. CSX Transportation, Inc.*, 650 F.3d 1392, 1402 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 323); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *accord Fils v. City of Aventura*, 647 F.3d 1272, 1292 n.24 (11th Cir. 2011).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court limits its review to those arguments the parties have expressly advanced.

The parties agree that Alabama law controls. Under Alabama law, the insured bears the burden of showing coverage, while the insurer has the burden of establishing an exclusion to coverage. *North River Insurance Co. v. Overton*, 59 So. 3d 1, 5 (Ala. 2010); *Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co.*, 817 So. 2d 687, 697 (Ala. 2001); *accord Pennsylvania National Mutual Casualty Insurance Co. v. Roberts Brothers, Inc.*, 550 F. Supp. 2d 1295, 1303 (S.D. Ala. 2008).

"It is well settled that any ambiguity in the policy is to be construed against the drafter and in favor of the insured." *First Mercury Syndicate, Inc. v. Franklin County*, 623 So. 2d 1075, 1077 (Ala. 1993). Whether an undefined policy term is ambiguous "is a question of law for a court to decide." *State Farm Fire & Casualty v. Slade*, 747 So. 2d at 308. "The terms of an insurance policy are ambiguous only if the policy's provisions are readily susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Id*. at 308-09.

## I. Bodily Injury or Property Damage during the Policy Period.

The Policies extend coverage to "bodily injury" and "property damage," but only if such injury or damage: (a) is caused by an "occurrence" within the coverage territory; and (b) occurs "during the policy period." (Doc. 48, Exhibit 8 at 4, 27; *id*., Exhibit 9 at 8). The plaintiff contends that the Alabama Supreme Court has construed such provisions to offer coverage only for bodily injury or property damage occurring between the dates the Parkers and Fernandez took possession of the houses and the date Policy 2 expired. Because Fernandez took possession after Policy 2 expired, the plaintiff argues there is no coverage at all as to him. Because the Parkers took possession after Policy 1 expired, the plaintiff argues there is no coverage under that policy as to the Parkers. The plaintiff would limit the potential coverage as to the Parkers to any bodily injury and property damage occurring between April 23, 2008 (when it admits the Parkers began their residency) and May 25, 2008, when Policy 2 expired. The plaintiff acknowledges there was bodily injury within this window but denies there was property damage during this time. (Doc. 45 at 3-4; Doc. 46 at 2, 14-18; Doc. 56 at 4-6). Thus, success on its argument would limit the plaintiff's exposure to the bodily injury experienced by the Parkers in a discrete 33-day period.

The defendants do not contest the proposition that the only bodily injury as to which coverage could lie is bodily injury to the Parkers and Fernandez occurring after they took possession of their respective houses. Nor do they disagree that Fernandez

[4]

took possession of his house after Policy 2 expired. They thereby concede that the plaintiff has no responsibility for bodily injury to Fernandez. (Doc. 54 at 17). The defendants also agree with the plaintiff that one or both Parkers experienced bodily injury before Policy 2 expired.

The defendants, however, do challenge the plaintiff's argument as to property damage. They disagree both with the plaintiff's interpretation of Alabama law and with its position that there was no property damage to either house before Policy 2 expired.

The plaintiff points to nothing in the language of the insuring agreement that precludes coverage for property damage occurring before the Parkers and Fernandez took possession of the houses. Instead, it clings to the Alabama Supreme Court's pronouncement that, "'as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time *the complaining party* was actually damaged.'" *United States Fidelity & Guaranty Co. v. Warwick Development Co.*, 446 So. 2d 1021, 1024 (Ala. 1984) (emphasis added) (quoting *Muller Fuel Oil Co. v. Insurance Company of North America*, 232 A.2d 168, 175 (N.J. App. Div. 1967)). According to the plaintiff, the highlighted language means that property damage occurring during the policy period while the original purchaser holds the property is covered only if the original purchaser complains of the damage but not if a subsequent purchaser of the damaged property complains. (Doc. 46 at 16; Doc. 56 at 1, 4-6).

*Warwick* will not support the weight the plaintiff assigns it. The issue in *Warwick* was not whether coverage extends to property damage occurring before the complaining party receives the property (there was not, as here, a succession of property owners) but whether coverage can be based on an insured's wrongful act within the policy period

[5]

when the only injury from the wrongful act occurs outside the policy period.[1] The phrase "complaining party" was only a convenient means of denominating someone injured by the insured's wrongful act, not a term of art deliberately chosen to artificially limit an insurer's responsibility. Indeed, the *Warwick* Court did not even select the term but simply imported it unexamined from the New Jersey opinion on which the Court relied for the proposition in which it was actually interested.[2] The three cases cited by the plaintiff as following *Warwick* did so only for the purpose intended by *Warwick* and did not employ it in the limiting sense the plaintiff desires.[3] The plaintiff has failed to show

---

[1] "At the time of the alleged act or omission of the insured, USF & G's liability policy was in effect, but it had expired at the time of the accrual of the cause of action, i.e., at the time the damage occurred." 446 So. 2d at 1026 (Jones, J. and Shores, J., concurring specially).

[2] *Muller* involved the parallel issue of coverage when the insured's wrongful act (a malicious prosecution) and the damage therefrom precede the policy's effective date but the final element of the cause of action (favorable termination of the criminal proceedings) occurs during the policy period. 232 A.2d at 174-76. As in *Warwick*, no issue was presented or addressed concerning coverage for property damage occurring within the policy period but before the underlying plaintiff receives the damaged property.

[3] In *American States Insurance Co. v. Martin*, 662 So. 2d 245 (Ala. 1995), the Court held only that there was no coverage for bodily injury where the insured's fraud against certain investors occurred during the policy period but the investors' mental anguish did not occur until after the policies were cancelled. *Id*. at 247, 249-50.

Likewise, in *State Farm Fire & Casualty Co. v. Gwin*, 658 So. 2d 426 (Ala. 1995), the Court held only that there was no coverage for bodily injury where the insureds' fraud against their purchasers occurred during the policy period but the purchasers' mental anguish occurred only after the policy expired. *Id*. at 428. If anything, *Gwin* argues against the plaintiff's position. The insureds sold the purchasers a house with pre-existing property damage and dropped their insurance on the house the same day as closing. *Id*. at 427. The purchasers later sued the insureds for this pre-existing property damage. The *Gwin* Court, however, did not rule that *Warwick* precluded coverage for property damage that already existed when the purchasers acquired the property; instead, it ruled that the insureds' misrepresentations did not cause the pre-existing property damage. *Id*. at 428. That the *Gwin* Court did not rely on *Warwick* to rule out coverage for pre-existing property damage even though it did rely on *Warwick* to rule out coverage for mental anguish amply underscores that *Warwick* did not in fact create the rule for which the plaintiff contends.

(Continued)

[6]

that the Policies unambiguously limit coverage for property damage to that which occurred after the Parkers and Fernandez purchased the property. On the contrary, the Policies may reasonably be read as providing coverage for property damage preceding their acquisition and, under Alabama law, that is enough to require that this construction be adopted.

The plaintiff appears to argue that, even if *Warwick* does not preclude coverage for property damage occurring before the Parkers and Fernandez acquired the property, there was in fact no property damage before their acquisition. The plaintiff offers no evidence to negate such property damage, and it does not point to materials in the file showing that the defendants cannot show such property damage. Instead, the plaintiff simply declares that no "evidence exists on this point." (Doc. 56 at 5). This ipse dixit is inadequate as a matter of law to carry the plaintiff's initial burden on motion for summary judgment.[4]

The plaintiff also argues that the Parkers experienced no additional property damage in the period between April 23, 2008 (when they purchased the property) and May 25, 2008 (when Policy 2 expired). (Doc. 45 at 4; Doc. 46 at 8, 16-17).[5] The

---

In *Liberty Mutual Fire Insurance Co. v. Sahawneh*, 2001 WL 530424 (S.D. Ala. 2001), the Court ruled only that there was no coverage for property damage where the insureds' fraud (concerning the property's history of flooding) occurred while the policy was in place but the only property damage alleged by the purchasers – from post-sale incidents of flooding – occurred after the insureds sold the property and cancelled the policy. *Id*. at *1-3.

[4] The defendants argue there is record evidence of property damage occurring before the Parkers and Fernandez purchased their respective houses. (Doc. 54 at 17; Doc. 55 at 6). They cite generally to several lengthy documents but fail to quote any helpful material or provide pinpoint citations. The Court is not required to scour this mass of material in an effort to find support for the defendants' position, and it declines to do so. *See* Fed. R. Civ. P. 56(c)(1)(A) (a party "must" cite to "particular parts of materials in the record"); *id*. 56(c)(3) (court "need consider only the cited materials"). Because the plaintiff failed to meet its threshold burden, the defendants' failure is immaterial.

[5] Since, as discussed in text, property damage preceding the Parkers' purchase is also covered, and since the plaintiff has not shown the absence of property damage during that period, (Continued)

deposition pages on which the plaintiff relies do not support this proposition. At most, they reflect that, in mid-July 2008, the Parkers' air-conditioning unit went out and the repairman told them the copper coils were blackened and corroded. (Doc. 48, Exhibit 3 at 56-58, 83-84). Nothing in this testimony comes close to negating damage to the coils – or to anything else in the house – occurring between April 23 and May 25, 2008.

Finally, the plaintiff denies that the Parkers and Fernandez are even suing for property damage preceding their purchase. (Doc. 56 at 5). This argument, raised for the first time in a reply brief, comes too late to be considered.[6] Nor has the plaintiff, which again offers only its ipse dixit, met its burden of directing the Court to specific points in the record that support its position.[7]

In summary, the parties agree there is no coverage under either policy with respect to Fernandez' claims of bodily injury and no coverage under Policy 1 with respect to the Parkers' claims of bodily injury. To this limited extent only, the plaintiff is entitled to summary judgment under Count III.

## II. Pollution Exclusion.

---

the value to the plaintiff of arguing there was no additional property damage after the purchase remains obscure.

[6] "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008); s*ee Park City Water Authority v. North Fork Apartments, L .P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying this rule in 2009 alone).

[7] The class complaint is 591 pages long and includes 2,770 numbered paragraphs. (Doc. 1, Exhibit A). The Court will not review this tome on the plaintiff's behalf, especially given that the plaintiff does not cite to it, not even generally.

With respect to Policy 2 only,[8] the plaintiff invokes a pollution exclusion. The parties disagree as to the interpretation of the exclusion, but the threshold question is whether the exclusion even applies to the coverage implicated by the class action.

The defendants seek coverage based on products/completed operations ("PCO") and do not seek coverage based on commercial general liability ("CGL"). According to Parker and Fernandez, the former coverage is not part of Policy 2 at all but constitutes a separate policy. (Doc. 55 at 2). The Court can find nothing in the record supporting this contention, especially given that the declarations page of Policy 2 includes a "products/completed operations aggregate limit" of $2 million. (Doc. 48, Exhibit 9 at 4).

But the question remains whether the pollution exclusion applies to the PCO portion of Policy 2. The exclusion is set forth in an endorsement, which states that it modifies "Commercial General Liability Part" and replaces "Exclusion f. under Paragraph 2, Exclusions of Section 1 – Coverage A – Bodily Injury And Property Damage Liability." (Doc. 48, Exhibit 9 at 28). This describes precisely the location of the original pollution exclusion in the Commercial General Liability Coverage Form. (*Id*. at 8, 10).

Switch for a moment to Policy 1. This policy contains an apparently identical CGL coverage form, an apparently identical pollution exclusion located in sub-paragraph f of Paragraph 2's list of exclusions, and an apparently identical replacement pollution exclusion endorsement. (Doc. 48, Exhibit 8 at 4, 6, 42). Policy 1 also contains a separate, ten-page "Products/Completed Operations Liability Form." (*Id*. at 27-36). This form does not reference a "Coverage A" as do the CGL forms, and its Exclusion f addresses not pollution but war. (*Id*. at 28). Moreover, the plaintiff concedes that a CGL "part" is synonymous with a CGL "form." (Doc. 56 at 8-9). There would appear to be no defensible basis for arguing that the pollution exclusion endorsement in Policy 1

---

[8] (Doc. 45 at 4-6; Doc. 46 at 2, 10, 18).

extends beyond the CGL form to the PCO form, and the plaintiff offers none. This is presumably the reason the plaintiff does not argue that the Policy 1 pollution exclusion endorsement applies in this case.

But, says the plaintiff, the situation is completely different with respect to Policy 2 because it, unlike Policy 1, contains no PCO form. (Doc. 56 at 1-2, 7-9). It is correct that Exhibit 9 to the plaintiff's motion for summary judgment includes no such form, but the plaintiff has not established that Exhibit 9 represents the entirety of Policy 2. Exhibit 9 has been plopped in the record on its own, without any affidavit or declaration from a representative of the plaintiff stating, much less swearing on personal knowledge, that Exhibit 9 is the entire policy. The plaintiff says the defendants do not contend there is a PCO form missing from Exhibit 9, (Doc. 56 at 3), but the insureds expressly point out that the absence of a PCO form from Exhibit 9 is "inexplicabl[e]." (Doc. 54 at 7).

The plaintiff suggests that no PCO form was needed for Policy 2 because the CGL form itself addresses PCO coverage. (Doc. 56 at 7-8). And so it does, (Doc. 48, Exhibit 9 at 12, 17, 21), but this was equally true for Policy 1, (*id*., Exhibit 8 at 8, 13, 17), yet Policy 1 contains a PCO form. While the plaintiff may be able ultimately to establish that Policy 2 contains no such form, it has yet to do so. It therefore has not established a necessary predicate to its argument – as to which it bears the burden – that the pollution exclusion endorsement excludes coverage in this case. The Court therefore pretermits discussion of the parameters of the pollution exclusion vis-à-vis Chinese drywall. The plaintiff is not entitled to summary judgment under Count V.

### III. Tract Housing Exclusion.

Policy 2 contains an exclusion, roughly speaking, for damages related to the operations, work or product of an insured or its sub-contractor "that are incorporated into a 'tract housing project or development.'" (Doc. 48, Exhibit 9 at 49). By its terms, the endorsement containing this exclusion modifies only the CGL form. (*Id*.). Because, as

discussed in Part II, the plaintiff has not met its burden of establishing that Policy 2 has no PCO form, it has not shown that this exclusion potentially applies in this case.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **granted in part**. The Court declares that Policy 1 does not potentially or actually cover the claims of Fernandez and the Parkers against S&O for bodily injury and that Policy 2 does not potentially or actually cover the claims of Fernandez against S&O for bodily injury. In all other respects, the motion for summary judgment is **denied**.[9]

DONE and ORDERED this 28th day of October, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] This opinion goes far towards establishing at least the plaintiff's duty to defend under Policy 1 as to property damage. The plaintiff's complaint raises only three grounds to the contrary, as discussed herein. As discussed in Part I, neither Policy unambiguously limits coverage to property damage occurring after the Parkers and Fernandez acquired the property and, under Alabama law, that is tantamount to a determination that the Policies extend coverage to property damage occurring during the Policy periods but before the property's acquisition. There is no tract housing exclusion under Policy 1, and the pollution exclusion endorsement under Policy 1 is limited to the CGL form, while coverage is sought under the PCO form (which contains no pollution exclusion). As long as the defendants can show "property damage" occurring during the period of Policy 1, it appears that S&O would be entitled to a defense.